# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

PICKENS COUNTY BRANCH OF NAACP, *et al.*;

    Plaintiffs-Appellants,

v.

SCHOOL DISTRICT OF PICKENS COUNTY;

    Defendant-Appellee.

Case No. 23-1871

## PLAINTIFFS-APPELLANTS'
## MOTION FOR SUMMARY VACATUR AND REMAND

Allen Chaney
AMERICAN CIVIL LIBERTIES
UNION OF SOUTH CAROLINA
P.O. Box 1668
Columbia, SC 29202
Tel: (843) 282-7953
achaney@aclusc.org

Anna Kathryn Barry
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
abarnes@naacpnet.org

*Attorneys for Plaintiffs-Appellants*

Plaintiffs-Appellants ("Plaintiffs") respectfully move this Court, under Local Appellate Rule 27(f), to summarily vacate the district court's order denying Plaintiffs' Motion for Preliminary Injunction, Exhibits A & B, and to remand for further proceedings. Plaintiffs' counsel has conferred with counsel for Defendant-Appellee School District of Pickens County ("Defendant" or, "District"), and the District opposes this motion.

## INTRODUCTION

Plaintiffs brought this lawsuit in response to the Defendant District's censorship of *Stamped: Racism, Antiracism, and You* ("*Stamped*"), a book about the history of race and racism in America. On September 26, 2022, the District's Board of Trustees ("Board") voted unanimously to remove all copies of *Stamped* from District libraries and prohibit any curricular use of *Stamped* in District classrooms. Plaintiffs contend that the District's censorship of *Stamped* violates their First Amendment rights to receive information in the school library and classroom because it was not reasonably related to a legitimate pedagogical interest and was decisively motivated by racial and political animus towards the opinions contained in *Stamped*. After filing their Complaint, Plaintiffs sought a preliminary injunction requiring the District to restore students' access to *Stamped* in advance of the 2023-24 school year.

On July 21, 2023, after receiving briefing and arguments, the district court denied Plaintiffs' motion. The court's ruling, which was announced from

1

the bench, did not contain any factual findings, did not state what legal standard the court applied to the merits of Plaintiffs' claims, and did not make specific findings regarding the irreparable injury to Plaintiffs or the balance of hardships. Rather, the court merely declared that Plaintiffs "have not made the requisite clear showing of each factor necessary for preliminary injunctive relief." ECF No. 17 (text order).

The district court's abuse of discretion leaps off the page. Because the district court failed to make particularized findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a), this Court is "constrained to conclude that the district court abused its discretion in denying the requested injunction." *Booker v. Timmons*, 644 F. App'x 219 (4th Cir. 2016) (per curiam) (vacating order denying preliminary injunction); *Bratcher v. Clark*, 725 F. App'x 203, 206 (4th Cir. 2018) (same); *Rullan v. Goden*, 782 F. App'x 285 (4th Cir. 2019) (same); *see also Wudi Industrial (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 192-93 (4th Cir. 2023) (reversing grant of preliminary injunction for failing to comply with Fed. R. Civ. P. 52).

Where, as here, the district court's error is manifest, formal briefing and argument is unnecessary and summary reversal should be granted. *See* Local R. 27(f)(1).

2

# BACKGROUND

I.  **Statement of Facts**

   A.  <u>Stamped: Racism, Antiracism, and You</u>

*Stamped: Racism, Antiracism, and You* is a #1 New York Times bestseller by Ibram X. Kendi and Jason Reynolds. ECF No. 7-1 at 2–3 (Memorandum of Law in Support of Preliminary Injunction). The book chronicles the history of racist ideas in America and explores how those ideas manifest today. *Stamped* is an adaptation of Kendi's seminal work, *Stamped from the Beginning*, and is written specifically for young adults. *Id.* The book received book-of-the-year honors from *Parents Magazine* and *Publishers Weekly*, was awarded Best Children's Book of the Year by *The Washington Post*, and was listed on *TIME Magazine*'s Ten Best Children's and Young Adult Books of the Year. *Id.* The National Educators Association ("NEA") categorizes *Stamped: Racism, Antiracism, and You* as a "young adult level" book and provides access to an educator guide, book club guide, and other classroom resources. *Id.* at 3–4.

   B.  <u>The Challenge to Stamped: Racism, Antiracism, and You</u>

In August 2022, three parents submitted written challenges to the use of *Stamped* in an English III course at D.W. Daniel High School. One parent argued that, although she had not read the book, it should be removed because it "promote[s] socialism." ECF No. 7-13 at 15 (Board Packet). Another parent, who is an officer with Pickens chapter of Moms For Liberty, a group dedicated to upholding a socially conservative ideology, ECF No. 7-1

3

at 16, argued that "no one should read [*Stamped*]," because "it demonstrates radical Marxism infecting our schools and our culture." ECF No. 7-13 at 5. A third parent challenged the book on grounds that it amounted to "objectible [sic] indoctrination." *Id.* at 17.

Following the three parental complaints, the school's principal appointed a book review committee to resolve the challenge. Per District policy, the review committee comprised of a teacher from the school, a media specialist/instructional coach, an administrator from the school, and a parent/legal guardian of a child enrolled in the school. Each member must read the book, consider the context of its use and any relevant instructional standards, then render a decision based on "the best interests of the students, the community, the school, and the curriculum." *See* ECF No. 7-14 (Policy IJ-R).

Following its review, the school review committee concluded that "[*Stamped*] is developmentally appropriate for high school students to analyze accuracy, tone, argument, and bias," and unanimously recommended that it "should remain available to students at Daniel High School, whether in a classroom or on a bookshelf." ECF No. 7-13 at 22–24. In support of its conclusion, the committee's written report cited 27 State English Language Arts ("ELA") standards that were furthered by the teacher's use of *Stamped*. *Id.*

After D.W. Daniel High School informed the parent-challengers of its decision to retain the book, one parent appealed to the District. ECF No. 7-

13 at 25–27. In response, the District superintendent convened a District-level book review committee. That committee conducted a new, independent review of the book. Like the school-level review committee, the District-level review committee unanimously recommended that *Stamped* be reinstated in the library and remain available as a "whole-class" instructional material in the classroom. *Id.* at 28–29. In explaining its decision, the District-level review committee noted that "[t]he teacher's communicated purpose for use and alignment with the [ELA] standards is important to articulate the intent for selection of this book." *Id.*

    C.    <u>Political Pressure to Remove Stamped: Racism, Antiracism and You</u>

While the school and District administration followed its policies in response to the challenges, political activists and elected officials lobbied the Board to remove *Stamped* for ideological reasons.

For example, although D.W. Daniel High School had only just received the parental challenges and there was not yet any reason for Board involvement, several individuals attended the Board's August 22, 2022, meeting to express their disapproval of *Stamped*.[1] Matthew Kutelick, a Republican politician who recently lost a campaign for the South Carolina House, appeared and testified that he would "fight to the death to ensure that [his] daughters and the sons and daughters of the people in [the] crowd .

---

[1] All District Board meetings are video recorded and made available on YouTube. Plaintiffs' Motion for Preliminary Injunction cites to those recordings extensively.

5

. . are not being indoctrinated by a racist, anti-American, Marxist ideology perpetrated by Ibram X. Kendi." ECF No. 7-1 at 12 (citing 8/22/22 Board Meeting at 1:20:28). Thomas Beach, a freshman state representative in the state's Freedom Caucus, spoke out against *Stamped* and warned that if the Board failed to remove the book it could provoke adverse action from the Freedom Caucus.[2] *Id.* at 1:25:26.

At the September 26, 2022, meeting, prior to the Board's resolution of the District-level challenge to *Stamped*, the Board again received overtly politicized condemnation of the book. Heather Mitchell, Chair for the Pickens County Moms for Liberty, argued that the book should be removed because it is "political and biased," "openly embrac[es] Marxism," and "idolizes Angela Davis," who she described as "a Marxist member of the Communist Party." Ms. Mitchell threatened that if the Board did not remove *Stamped*, she and Moms for Liberty would replace them with more "liberty-minded" candidates. ECF No. 7-1 at 13–14 (citing 9/26/22 Board Meeting at 1:22:00).

D.  Removal of Stamped: Racism, Antiracism, and You

The Board resolved the District-level challenge to *Stamped* at its September 26, 2022, board meeting. After receiving public comments, the assistant superintendent presented the Board with the District-level review committee's findings and conclusions. ECF No. 7-1 at 14 (citing 9/26/22

---

[2] The South Carolina Freedom Caucus had, at the time, already sued two South Carolina school districts for conduct the Freedom Caucus believed was in violation of a vaguely worded "Anti-CRT" budget proviso. ECF No. 7-1 at 18.

6

Board Meeting at 2:12:40). After receiving the committee's unanimous recommendation to restore complete access to *Stamped*, the Board began its deliberation.

Almost immediately, one Board member moved to remove *Stamped* "from our classrooms and any use in our schools whatsoever for a period of five years." *Id.* The motion immediately received a second and was discussed by the Board. One Board member commented that "I don't think taxpayers should be paying [for *Stamped*]." *Id.* Another added that the book isn't appropriate "anywhere in any school in any district." Another brought up the Supreme Court case of *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982), but only for the purpose of arguing that the case is irrelevant because it was decided "back in 1982" and "now we have Amazon [and] public libraries." *Id.* at 14–15. Another Board member directly attacked the viewpoints expressed in *Stamped* and stated, "I think we all agree this is an opinion piece. I read it. It doesn't belong in the classroom." *Id.* at 14.

During discussion on the motion, Board members did not specify what they found objectionable about *Stamped*. The Board did not discuss how the book was being used in the classroom or for what purpose. The Board did not discuss any curricular priorities, concerns about inaccuracies, state learning standards, or the rights of students or teachers. And despite District policy requiring the Board's decision to be "based upon" the District-level book

review committee's report, the Board never mentioned its findings, analysis, or recommendation. *Id.* at 15.

At the request of two Board members, the Board briefly discussed allowing library access to *Stamped* subject to signed and witnessed parental consent. After that motion was voted down, the Board voted on the original motion to remove the book for five years. The motion passed unanimously, 7-0. *Id.*

## II. Plaintiffs' Legal Claims

Based on the facts alleged above, Plaintiffs sued. They alleged that the District's censorship of *Stamped* was a brazen attempt to suppress specific views on race, politics, and national identity that the Board opposed. Plaintiffs asserted that the Board's action triggered First Amendment scrutiny because it infringed on their right to access information—like the ideas contained in *Stamped*—in their classrooms and libraries. They argued that removal of *Stamped* does not survive First Amendment scrutiny because the District cannot show that its curricular prohibition on *Stamped* was "reasonably related to legitimate pedagogical concerns," *Virgil v. Sch. Bd. of Columbia Cnty., Fla.*, 862 F.2d 1517, 1521-25 (11th Cir. 1989) (citing *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988)); *Arce v. Douglas*, 793 F.3d 968, 983 (9th Cir. 2015) (same), or that its removal of *Stamped* from the library was necessary to avoid "material and substantial interference with schoolwork and discipline," *Tinker v. Des Moines Comm. Sch. Dist.*, 393

8

U.S. 503, 511 (1969), and was not removed "because [the District] dislike[s] the ideas contained in th[e] book[] and seek[s] by [its] removal to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *Pico*, 457 U.S. at 872.

### III. Preliminary Injunction Litigation

On June 26, 2023, Plaintiffs moved for a preliminary injunction ordering the District to restore students' access to *Stamped* for the 2023-24 school year. ECF No. 7. In support, Plaintiffs submitted four declarations and ten exhibits—including records showing the findings and conclusions of the school- and District-level book review committees. *See* ECF Nos. 7-2 through 7-15. The motion also extensively relies on the audiovisual recordings of the Board's August 22 and September 26 Board meetings, which are publicly available on YouTube.[3] Each Plaintiff alleged that the Board's action would irreparably harm their First Amendment right to access *Stamped* in the library. Additionally, two Plaintiffs declared that they were enrolled in the same English III Honors course where *Stamped* was assigned in the previous school year and that the District's curricular prohibition would irreparably harm their First Amendment right to access *Stamped* in the classroom. ECF Nos. 13-1 (Laurence Decl.) & 13-2 (Turner Decl.).

---

[3] *See* SDPC Board of Trustees Meeting (In-Person) - 08/22/22 - YouTube (last accessed Sept. 13, 2023); SDPC Board of Trustees Meeting (In-Person) - 09/26/22 - YouTube (last accessed Sept. 13, 2023).

9

Ten days later, at the District's July board meeting, the Board went into executive session along with its litigation counsel to address a motion "for legal matters." ECF No. 13 at 8 (citing SDPC Board of Trustees - Called Board Meeting (Virtual) - 7/6/23 - YouTube (last accessed Sept. 13, 2023)). That motion, which ultimately passed, restored library access to *Stamped* subject to parental consent. *Id.* The complete curricular prohibition remained intact. *Id.*

On July 10, the District filed its Opposition to Plaintiffs' Motion. ECF No. 9. There, it argued that because of its subsequent partial reinstatement of *Stamped*, Plaintiffs lack standing, that their claims are moot, and that their injuries are no longer sufficiently imminent to warrant preliminary relief. *Id.* The District also submitted nearly identical declarations from six Board members asserting that their secret, unspoken motivations for censoring *Stamped* were their independent analyses of the book's "factual errors and omissions." *Compare* ECF Nos. 9-5 at ¶¶ 8-13 *with* 9-6 at ¶¶ 9-14, 9-7 at ¶¶ 6-11, *and* 9-8 at ¶¶ 4-9. The District disputed whether the First Amendment was implicated by its removal of *Stamped*, but argued that even if it was, the book's factual inaccuracies justified its removal.

On July 17, Plaintiffs filed their Reply. ECF No. 13. Plaintiffs argued that the District's partial reinstatement of *Stamped* still infringed their First Amendment rights and, even if not, that the District failed to carry its "formidable burden" to prove that it is "absolutely clear that the alleged wrongful behavior could not be reasonably be expected to recur." *Friends of*

10

*the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). On the merits, Plaintiffs argued that the District's pretextual, *post hoc* justifications for removing *Stamped* were incredible and, in any event, were nonresponsive to the curricular purpose of the book (which did not rely on the book's factual accuracy). ECF No. 13 at 10-14.

On July 21, the district court heard arguments on Plaintiffs' Motion. Immediately following arguments, the Motion was denied. *See* Ex. A (Tr. 7/21/23, pp 30:11–31:18).

### IV. The District Court's Order

Following the Parties' arguments, the district court orally announced its ruling.

> THE COURT: After a thorough consideration of the record and the arguments and the applicable law, I'm going to deny the plaintiff's motion for preliminary injunction, ECF No. 7, because I find that plaintiffs have not made the requisite clear showing of each factor necessary for preliminary injunctive relief with respect to their claims. <u>First, this case involves complicated First Amendment issues.</u> And it's clear that both sides can point to law that favors their arguments. On the one hand, plaintiffs have certain rights under the First Amendment. While on the other hand, local school boards also have broad discretion in the management of the school affairs. And while states and local school boards must exercise that discretion in a manner that comports with the imperatives of the First Amendment, <u>there are simply too many factual questions here for me</u> to conclude that plaintiffs have made the requisite clear showing of a likelihood of success on the merits. And, likewise, <u>I don't think plaintiffs have made a clear showing of a likelihood of suffering irreparable harm in the absence of preliminary relief</u>. As for the balance of equities in the public

11

>   interest, I actually think these factors slightly favor the district because preliminary injunctive relief would dramatically change the status quo. In other words, the district has a strong interest in controlling its schools by its duly elected officials. And this Court is very reluctant to unnecessarily usurp that authority, especially at this preliminary stage where <u>there are several questions of fact that need to be resolved</u>. And so, for these reasons, I'm going to deny the plaintiffs' motion. We will be at recess.

Tr. 7/21/2023, pp 30:11–31:18 (emphasis added).

Later that day, the district court issued a text ruling stating:

>   For the reasons stated on the record during the hearing, the Court finds that Plaintiffs have not made the requisite clear showing of each factor necessary for preliminary injunctive relief with respect to their claims. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Accordingly, the Court denies Plaintiffs' motion.

ECF No. 17 (Text Order).

## LEGAL STANDARD

The Court reviews the district court's denial of a preliminary injunction for abuse of discretion, "examining all factual findings for clear error and legal conclusions *de novo*." *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 138 (4th Cir. 2023) (citing *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021)).

To facilitate meaningful appellate review, the district court's decision must be supported by a full, written explanation of its particularized findings

12

of fact and conclusions of law. Fed. R. Civ. P. 52(a); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 423 (4th Cir. 1999).

## ARGUMENT

I.   **The district court abused its discretion by denying Plaintiffs' Motion without adequate findings of fact or conclusions of law.**

Compliance with Fed. R. Civ. P. 52(a) "is of the highest importance." *Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316 (1940). As this Court has explained, Fed. R. Civ. P. 52(a) "requires a district court to give a full, written explanation supporting its preliminary injunction order." *Hoechst Diafoil Co.*, 174 F.3d at 423. The rule "allows the parties to better understand the reasons for the court's actions," and protects the losing party's right to seek "meaningful review of that decision." *Id.* When a district court's preliminary injunction order lacks the particularized findings of fact and conclusions of law, this Court is "constrained to conclude that the district court abused its discretion." *Booker*, 644 F. App'x 219; *Bratcher*, 725 F. App'x at 206; *Rullan*, 782 F. App'x 285.

As the district court acknowledged, this case presents "complicated First Amendment issues." Tr. 7/21/2023 at 30:18-19. But the complexity of the legal issue does not preclude injunctive relief. *See Scheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 684 (D. Me. 1982) (granting preliminary injunction against removal of school library book); *see also Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("Preliminary injunctions should not be mechanically

13

confined to cases that are simple or easy."). Rather, the complexity merely sharpens the need for the district court to *resolve* the legal dispute in a manner that is understandable and reviewable. Here, the district court denied Plaintiffs' Motion without articulating what legal standard governs the merits of their First Amendment claims. And though the court conceded that the Board's curricular discretion is limited by "the imperatives of the First Amendment," *id.* at 30:24-31:1, it failed to explain what those imperatives require. That—by itself—is a reversible abuse of discretion.

But the error goes further. Without a legal test, there is no way to judge what facts must be proven and, just as importantly, which party carries the burden of proving them. Here, Plaintiffs allege that Defendant carries the burden of showing that its censorship of *Stamped* was reasonably related to a legitimate pedagogical interest and was not motivated by a desire to enforce political orthodoxy. If correct, that means factual disputes bearing on the Board's motivation for removing *Stamped* do not, as the district court presumed, weigh against Plaintiffs' likelihood of success on the merits.

The district court's finding that "there are simply too many factual questions here" further impedes meaningful review. The district court is the factfinder. Its job is to resolve factual disputes. When the parties introduce competing evidence bearing on the same material fact, the district court must weigh the evidence and make a finding. Once it makes those findings, they are reviewed by this Court for clear error. *Pashby v. Delia*, 709 F.3d

14

307, 319 (4th Cir. 2013). But in the absence of such findings, there is nothing to review.

Here, for example, the Board's September 26, 2022, deliberation that led to its censorship of *Stamped* (which was contemporaneously recorded) contained *no* comment by *any* Board member about the book's historical accuracy or its bearing on the book's educational suitability for English III Honors. But rather than weighing the strength and credibility of competing evidence and then making a factual finding, the district court took no position on what motivated the Board's censorship. If embraced by this Court, the district court's lackadaisical approach to factfinding would allow a defendant to defeat *any* motion for preliminary relief merely by manufacturing a factual dispute.

Finally, the district court's ruling that Plaintiffs failed to carry their burden on the other *Winter* factors does not salvage its paltry ruling on the merits. Here, because First Amendment violations are *per se* irreparable injuries, *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978), the likelihood of irreparable harm is indistinguishable from the likelihood of success on the merits. Similarly, the balance of equities favors injunctive relief "when there is a likely First Amendment violation," because the Defendant is "in no way harmed by issuance of a preliminary injunction which prevents [it] from enforcing restrictions likely to be found unconstitutional." *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 (4th Cir. 2013) (quoting *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521

15

(4th Cir. 2002)). Because the non-merits *Winter* factors each collapse into Plaintiffs' likelihood of success on the merits, the district court's abuse of discretion on that element demands reversal.

## CONCLUSION

The district court's abuse of discretion is readily discernible on the face of its ruling. The Federal Rules of Civil Procedure demand that orders denying injunctive relief contain reviewable findings of fact and conclusions of law. Because the district court's cursory ruling plainly shirks that obligation, this Court should conserve its judicial resources, forgo additional briefing and arguments, and summarily vacate and remand.

Dated: September 14, 2023

Respectfully submitted,

**ACLU OF SOUTH CAROLINA**

*/s Allen Chaney*
_____
Allen Chaney
Fed. Id. 13181
P.O. Box 1668
Columbia, SC 29202
Tel: (843) 282-7953
achaney@aclusc.org

**NAACP**

Anna Kathryn Barry**
4805 Mt. Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
abarnes@naacpnet.org
mtiku@naacpnet.org

16